Anthony R. Bisconti (SBN 269230)
tbisconti@bienertkatzman.com
Nathan W. Reinhardt (SBN 311623)
nreinhardt@bienertkatzman.com
**BIENERT | KATZMAN, PC**
601 W. 5th Street, Ste. 720
Los Angeles, CA 90071
Telephone (213) 528-3400
Facsimile (949) 369-3701


Attorneys for Interested Party Crystal Holmes

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>DEAN M. HARRIS,<br><br>    Debtor. | Case No.: 2:21-bk-10152-ER<br><br>Chapter 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>[Motion for Relief from Automatic Stay and Declaration of Anthony R. filed concurrently herewith]<br><br><u>Hearing Information</u>:<br>Date:  February 22, 2021<br>Time: 10:00 a.m.<br>Place: 255 E. Temple Street<br>        Courtroom 1568<br>        Los Angeles, CA 90012 |

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ................................................................................................................ 1

II.    SUMMARY OF RELEVANT FACTS .............................................................................. 2

    A.    The Harrises abuse Rosalina's position of trust and authority for over a decade to harass and intimidate Ms. Holmes. ..................................................................... 2

    B.    The Harrises continued to abuse Rosalina's position as a LASD detective, culminating in their orchestration of the false arrest of Ms. Holmes. ............................. 3

    C.    Ms. Holmes was awarded more than $3 million. ........................................................ 5

    D.    The District Court denied Rosalina's various post-judgment motions, and while Rosalina filed a Notice of Appeal, she did not seek a stay pending appeal. ................... 5

    E.    Ms. Holmes diligently began enforcing her Judgment, while the Harrises engaged in a series of transfers and transactions to dissipate assets and frustrate Ms. Holmes. ............................................................................................................................ 6

    F.    Rosalina filed the Prior Bankruptcy Case in bad faith solely to delay and hinder Ms. Holmes, and this Court promptly dismissed it. ......................................................... 7

    G.    The Debtor filed this case hours before a hearing on the District Court's OSC why the Residence should not be sold. ........................................................................... 9

    H.    The Residence lacks any equity. ................................................................................. 9

III.    THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY ............................ 11

    A.    Legal standard. .......................................................................................................... 11

        1.    "Cause" exists to grant relief from the automatic stay because the Petition was filed in bad faith. ...................................................................................... 11

    B.    The Residence has no equity and is not necessary for an effective reorganization ......... 14

    C.    This case was filed as part of a scheme to delay, hinder, or defraud Ms. Holmes involving multiple bankruptcy filings affecting the Residence. ...................................... 15

IV.    CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

*Page*

**<u>Cases</u>**

*In re Brown,*
   88 B.R. 280 (Bankr. D. Haw. 1988) ................................................................................. 13

*In re Delaney–Morin,*
   304 B.R. 365 (9th Cir. BAP 2003) .................................................................................. 11

*In re Ebersole,*
   440 B.R. 690 (Bankr. W.D. Va. 2010) ....................................................................... 14, 15

*In re Edwards,*
   2017 WL 3616582 (Bankr. E.D.N.C. Aug. 22, 2017) ....................................................... 13

*In re First Yorkshire Holdings, Inc.,*
   470 B.R. 864 (B.A.P. 9th Cir. 2012) ............................................................................... 15

*In re Griffieth,*
   209 B.R. 823 (Bankr. N.D.N.Y. 1996) ........................................................................... 13

*In re Jakovljevic-Ostojic,*
   517 B.R. 119 (Bankr. N.D. Ill. 2014) ............................................................................. 12

*In re Jin Qing Li,*
   2018 WL 1354548 (B.A.P. 9th Cir. Mar. 12, 2018) ......................................................... 11

*In re Johnson,*
   2008 WL 183342 (Bankr. E.D. Va. Jan. 18, 2008) .......................................................... 16

*In re Kinney,*
   51 B.R. 840 (Bankr. C.D. Cal. 1985) ............................................................................. 16

*In re LLC 1 07CH12487,*
   608 B.R. 830 (Bankr. N.D. Ill. 2019) ............................................................................. 12

*In re MacDonald,*
   755 F.2d 715 (9th Cir.1985) ......................................................................................... 12

*In re Madera,*
   2008 WL 351446 (Bankr. E.D. Pa. Feb. 7, 2008) ............................................................ 16

*In re Marks,*
   174 B.R. 37 (E.D. Pa. 1994) ......................................................................................... 13

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

*In re Mitchell,*
    357 B.R. at 154 (Bankr. C.D. Cal. 2006) ......................................................................... 12

*In re Mottilla,*
    306 B.R. 782 (Bankr. M.D. Pa. 2004) ............................................................................. 13

*In re Oklahoma P.A.C. First Ltd. P'ship,*
    122 B.R. 394 (Bankr. D. Ariz. 1990) .............................................................................. 12

*In re Piazza,*
    719 F.3d 1253 (11th Cir. 2013) ....................................................................................... 12

*In re Powers,*
    135 B.R. 980 (Bankr. C.D. Cal. 1991) ........................................................................ 1, 12

*In re Purdy,*
    591 B.R. 307 (Bankr. N.D. Ohio 2018) ..................................................................... 14, 15

In re Selinsky,
    365 B.R. 260 (Bankr. S.D. Fla. 2007) ............................................................................ 16

*In re Woody,*
    578 B.R. 739 (Bankr. M.D.N.C. 2017) ...................................................................... 12, 13

*In re Young,*
    2011 WL 3799245 (Bankr. D.N.M. Aug. 29, 2011) .................................................. 14, 15

*In re Yukon Enterps., Inc.,*
    39 B.R. 919 (Bankr. C.D. Cal. 1984) .............................................................................. 12

*Little Creek Dev. Co. v. Commonwealth Mrtg. Corp. (In re Little Creek Dev. Co.),*
    779 F.2d 1068 (5th Cir. 1986); ....................................................................................... 12

Maines v. Wilmington Sav. Fund Soc'y,
    2016 WL 3661577 (W.D. Va. July 1, 2016) .................................................................. 16

*Matter of Vitreous Steel Prod. Co.,*
    911 F.2s 1223 (7th Cir. 1990) ........................................................................................ 14

McDow v. Smith,
    295 B.R. 69 (E.D. Va. 2003) .......................................................................................... 13

*Nantucket Investors II v. California Federal Bank (In re Indian Palm Assocs., Ltd.),*
    61 F.3d 197 (3d Cir. 1995) ............................................................................................. 14

*Pistole v. Mellor (In re Mellor),*
    734 F.2d 1396  (9th Cir. 1984) ....................................................................................... 14

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

*State of Idaho v. Arnold (In re Arnold)*,
  806 F.2d 937 (9th Cir. 1986) ........................................................................................ 12

*Stewart v. Gurley*,
  745 F.2d 1194 (9th Cir. 1984) ...................................................................................... 14

*United Enters. v. ACI Sunbow, LLC (In re ACI Sunbow,LLC)*,
  206 B.R. 213 (Bankr. S.D. Cal. 1997) .......................................................................... 12

United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,
  484 U.S. 365 (1988) ...................................................................................................... 14

*Vardan v. Wells Fargo Bank, N.A.*,
  606 B.R. 681 (E.D. Va. 2019) ...................................................................................... 16

**Statutes**

11 U.S.C. § 362(a) ............................................................................................................ 14

11 U.S.C. §§ 362(d)(1) ............................................................................................. 1, 11, 16

11 U.S.C. § 362(d)(2) .......................................................................................... 2, 14, 15, 16

11 U.S.C. § 362(d)(4) ............................................................................................... 11, 15 16

**Rules**

Fed. R. Evid. 201 ............................................................................................................. 10

LBR 4001-1(c)(4). ............................................................................................................. 2

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This is the quintessential case where relief from stay should be granted. Just hours before Dean Harris (the "<u>Debtor</u>") filed this case, the Honorable Philip S. Gutierrez, United States District Judge, was prepared to grant movant Crystal Holmes's ("<u>Ms. Holmes</u>") motion to sale the Debtor's real property located at 400 W. Altadena Drive, Altadena, California (the "<u>Residence</u>"). Those proceedings were part of Ms. Holmes's ongoing efforts to collect on her judgment (the "<u>Judgment</u>") against the Debtor's spouse, Rosalina Harris ("<u>Rosalina</u>" and, together with Debtor, the "<u>Harrises</u>"), entered in the case of *Crystal Holmes v. Rosalina Harris et al.* pending before the District Court (the "<u>1983 Action</u>"). Pursuant to that Judgment, Ms. Holmes was awarded more than $3 million after a federal jury unanimously found that Rosalina maliciously and oppressively violated Ms. Holmes's constitutional rights by procuring her false arrest under the color of law—conduct in which Debtor was directly and actively involved. This is the second bankruptcy filing in the last several months filed by the Harrises in an effort to delay, hinder, and frustrate Ms. Holmes, with Rosalina's prior chapter 11 case being dismissed by this Court as a bad faith filing, among other reasons. *See In re Rosalina Lizardo Harris*, Case No. 2:20-bk-12839-ER (the "<u>Prior Bankruptcy Case</u>").

Here, cause exists to lift the automatic stay to permit Ms. Holmes to complete her efforts before the District Court to sale the Residence pursuant to 11 U.S.C. §§ 362(d)(1), (2), and (4).

First, "cause" exists to grant Ms. Holmes relief from the automatic stay. Ms. Holmes's interest in the Residence is not protected by an adequate equity cushion, because there is no equity in the Residence (as explained below). Additionally, as detailed in Ms. Holmes's previously filed *Motion to Dismiss Bankruptcy Case* (the "<u>Motion to Dismiss</u>") [Dkt. No. 22], this case was filed in bad faith. *See In re Powers*, 135 B.R. 980, 998 (Bankr. C.D. Cal. 1991) ("It is well settled throughout the circuits including the Ninth, that 'cause' for relief from stay under Section 362(d)(1) may include a finding by the Court that debtor's petition was filed in bad faith") (citation omitted).

Second, there is no equity in the Residence. Based on Ms. Holmes's appraisal, the property is worth $1,175,000. *See* Bisconti Decl., Ex. 7 (Appraisal). The first position deed of trust in favor of Nationstar Mortgage (Mr. Cooper) is owed $451,223. *See* Dkt. 19 (Schedules). Ms. Holmes's Judgment,

which is secured against the Residence pursuant to a validly recorded Abstract of Judgment, exceeds $3 million. *See* Bisconti Decl. Ex. 3 (Writ of Execution) and 2 (Recorded Abstract of Judgment). Under no circumstance is there any equity in the Residence that could be available to unsecured creditors, and because this is a chapter 7 case, the Residence is not necessary for an effective reorganization. Accordingly, the Court should grant Ms. Holmes relief from the automatic stay. *See* 11 U.S.C. § 362(d)(2).

Finally, this case was filed as part of a scheme to delay, hinder, or defraud Ms. Holmes, and is the second bankruptcy filing affecting the Residence and preventing Ms. Holmes from proceeding against it. The same is true of the Prior Bankruptcy Case, filed by the Debtor's spouse, which this Court dismissed as a bad faith filing. As a result, Ms. Holmes is entitled to relief under Section 362(d)(4) also.

For these reasons, and as more fully set forth below, the Court should grant Ms. Holmes relief from stay to continue proceeding in the District Court so that she can complete the sale of the Residence, which the District Court is prepared to grant.

## II.    SUMMARY OF RELEVANT FACTS[1]

### A.    The Harrises abuse Rosalina's position of trust and authority for over a decade to harass and intimidate Ms. Holmes.

The Debtor's spouse, Rosalina, was a LASD detective (now sergeant). *See* Dkt. No. 24, Ex. 3 at ¶ 4. Dean is her husband. *Id.* at ¶ 7. Arlani Harris ("Arlani") is the Harrises' adult daughter. *Id.* The Harrises live at the Residence, which is located in Altadena, California. *See* Dkt. No. 1.

In 1998, Ms. Holmes purchased the home adjacent to the Debtor's Residence. Dkt. No. 23 Ex. 1 (Declaration of Ms. Holmes) at ¶ 2. For roughly a decade, the Harrises targeted, intimidated, and harassed Ms. Holmes through various acts of misconduct. This included, among other things:

---

[1] Many of the pertinent facts and argument supporting this Motion have previously been set forth in Ms. Holmes's Motion to Dismiss and the evidence filed in support thereof, particularly with respect to "cause" for relief from stay under Section 362(d)(1), and Section 362(d)(4). *See* Dkt. No. Dk. No. 22 at 2-20; *see also* Dkt. No. 23 (Declaration of Anthony R. Bisconti in Support of Motion to Dismiss) and Dkt. No. 24 (Request for Judicial Notice in Support of Motion to Dismiss). The pertinent facts are stated here again, since the local rules provide that "A motion for relief from the automatic stay must be filed separately from, and not combined in the same document with, any other request for relief, unless otherwise ordered by the court." LBR 4001-1(c)(4).

- Parking their vehicles directly in front of and behind Ms. Holmes's vehicle so that Ms. Holmes could not move it;

- Parking and driving Rosalina's LASD issued vehicle on Ms. Holmes's property without permission;

- Deliberately ramming their truck into Ms. Holmes's parked vehicle, causing damage;

- Deliberately using a leaf blower and hose to blow and spray trash and debris, including dog urine and feces from their dogs, onto Ms. Holmes's yard and driveway;

- Cutting a gate on Ms. Holmes's property that was attached to a fencepost between the properties;

- Putting a shovel through the fence to tear down parts of a tarp Ms. Holmes had installed on her property; and

- Intentionally running over and destroying a survey post Ms. Holmes had installed to mark the property line.

*See id.* at ¶ 2-5.

Eventually, Ms. Holmes submitted a complaint to the LASD. *See id.* at ¶ 4. Rosalina was purportedly admonished for her conduct but, unfortunately, undeterred.

**B.    The Harrises continued to abuse Rosalina's position as a LASD detective, culminating in their orchestration of the false arrest of Ms. Holmes.**

After Ms. Holmes's official complaint to LASD, the Harrises took their abuse of Rosalina's position as a LASD detective to new heights. The Harrises used Rosalina's law enforcement position to intimidate and frighten Ms. Holmes, repeatedly requesting sheriff's deputies to come to Ms. Holmes' house with various frivolous complaints. For example, between May 22, 2014 and April 4, 2018, LASD personnel appeared at Ms. Holmes's home at least ten times related to complaints made by the Harrises. *See* Dkt. No. 23, Ex. 1, at ¶ 7. These requests ranged from demanding that Ms. Holmes remove a tarp she had attached to her side of a fence between her backyard and the Debtor's backyard, demanding that Ms. Holmes remove a ladder off the same fence, and a request to allow Dean and LASD personnel to come to her front door after midnight to look at a package that had been errantly delivered to her residence instead of the Debtor's Residence. *Id.* The Harrises believed they could continue to harass Ms. Holmes

with impunity because of Rosalina's position with the LASD. *See, e.g.*, *id.* at ¶ 5 (Dean told Ms. Holmes that calling the police would be futile because "***they're not going to do anything to us.***") (emphasis added).

Eventually, the Harrises orchestrated the false arrest of Ms. Holmes. On February 25, 2017, at approximately noon, Ms. Holmes had arrived home in her vehicle. The Debtor and Arlani were in their vehicle about two blocks ahead of Ms. Holmes and saw her behind them. They then parked and waited for her to arrive. While Ms. Holmes slowly and safely approached her home, Arlani began to cross the street. Ms. Holmes drove past Arlani and parked in her driveway. Arlani and the Debtor, who had crossed the street moments prior, called Rosalina, who told them to call the Sheriff's station. They did, claiming that Ms. Holmes attempted to hit Arlani as she was crossing the street. Rosalina followed up shortly after that, calling LASD regarding her "neighbor trying to hit [her] daughter" and confirming that officers were en route.  *See* Dkt. No. 23, Ex. 2 (Declaration of Scott L. Menger) at ¶¶ 4-7; *see also* Dkt. No. 24, Ex. 3 at ¶¶ 82-86, 93-94, 96-101.

The Debtor and Arlani lied to responding officers about what occurred. They claimed that Ms. Holmes accelerated her vehicle and intentionally swerved, trying to run over Arlani – effectively accusing Ms. Holmes of attempted murder. *See* Dkt. No. 23, Ex. 1 at ¶¶ 8-9, 14-15, Ex. 2 at ¶¶ 4-5; *see also* Dkt. No. 24, Ex. 3 at ¶¶ 109-110, 113. Video footage proved that their accusations were deliberate lies. When the responding officers indicated they did not intend on arresting Ms. Holmes, Rosalina—who had now arrived on the scene—told more lies to them and stalled until her long-time friend (who happened to be the incoming duty sergeant, as a shift change was about to occur) came to the scene. Rosalina spoke to him alone as soon as he arrived, out of earshot of the other officers, and insisted that he arrest Ms. Holmes. Rosalina gave the sergeant the impression that she had been physically present and had witnessed the incident. Under that impression, and at Rosalina's insistence, the sergeant directed the other officers to arrest Ms. Holmes. *See* Dkt. No. 23, Ex. 2 at ¶¶ 4-5, 7, 11-14; *see also* Dkt. No. 24, Ex. 3 at ¶¶ 114-123, 125-127, 129-30. As a result, Ms. Holmes was arrested for assault with a deadly weapon, went to jail, was fired from her job, lost substantial income, and was unemployed for approximately one year. *See* Dkt. No. 23, Ex. 1 at ¶¶ 8-11.

Unfortunately for the Harrises, because of their years-long intimidation and harassment of Ms. Holmes, Ms. Holmes had installed security cameras on her home, catching the entire incident on video. *See id.* at ¶ 15. The video proved that the statements by the Debtor and Rosalina (and their daughter) were lies, showing Arlani laughing and performing a celebratory dance for Dean after lying to the police officers and procuring Ms. Holmes's wrongful arrest. Dean, together with Rosalina, in form and substance committed a fraud. As the jury found, this conduct was done "with malice, oppression, or reckless disregard of [Ms. Holmes's] constitutional rights." Dkt. No. 24, Ex. 4 (Verdict).

The Harrises' campaign against Ms. Holmes did not end there. They continued to use Rosalina's authority as a LASD detective to have the police harass Ms. Holmes without cause. For example, months after her false arrest, the Debtor reached over the fence while Ms. Holmes was physically nearby and tore down her tarp. Dkt. No. 23, Ex. 1 at ¶ 14. The Debtor and Rosalina, who was observing nearby, falsely claimed that Ms. Holmes stabbed the Debtor's hand. *Id.* Again, it was all caught on Ms. Holmes's security video; this time, Ms. Holmes was not subjected to arrest due to the Harrises' lies and false allegations.

### C. Ms. Holmes was awarded more than $3 million.

On May 3, 2018, Ms. Holmes filed the 1983 Action against Dean, Rosalina, and Arlani. *See* Dkt. No. 24, Ex. 2 (Complaint). On July 2, 2019, a jury returned a verdict in favor of Ms. Holmes and against Rosalina. *Id.* Ex. 4. The jury found that Rosalina acted deliberately and with malice, oppression, or reckless disregard for Ms. Holmes's constitutional rights by using her official status and authority as a LASD detective to procure the wrongful arrest of Ms. Holmes without probable cause. *Id.* The jury awarded Ms. Holmes $765,952 in compensatory damages and $1.5 million in punitive damages. *Id.* The District Court also awarded Ms. Holmes approximately $763,000 in attorneys' fees and costs. *See Id.* Ex. 7 (Order Awarding Attorney Fees).

### D. The District Court denied Rosalina's various post-judgment motions, and while Rosalina filed a Notice of Appeal, she did not seek a stay pending appeal.

On August 8, 2019, Rosalina filed a motion for judgment as a matter of law, and a motion for a new trial. The District Court denied these motions on September 19 and October 4, 2019, respectively. *See* Dkt. No. 24, Exs. 5 (Order Denying Motion for JNOV) and 6 (Order Denying Motion for New Trial).

The District Court wrote that "[t]he jury concluded that [Rosalina], a law enforcement officer, carried out the ***wrongful arrest of an innocent person*** under the authority of her position, in ***deliberate disregard*** of [Ms. Holmes's] right to be free of unlawful arrest . . . [t]he Court ***concludes that this is reprehensible conduct***." *Id.* Ex. 6 at 7 (emphasis added). On October 11, 2019, Rosalina filed a notice of appeal. *Id.* Ex. 8 (Notice of Appeal).

Despite the flurry of post-verdict motions Rosalina filed, she elected never to seek a stay of enforcement of the Judgment pending appeal. In fact, Rosalina testified during the Prior Bankruptcy Case that she never spoke with a surety about the possibility of posting a bond, and never did *anything* to explore the possibility of posting a bond. Dkt. No. 23, Ex. 3 at 35:10-19.

### E.    Ms. Holmes diligently began enforcing her Judgment, while the Harrises engaged in a series of transfers and transactions to dissipate assets and frustrate Ms. Holmes.

On December 17, 2019, the District Court issued a writ of execution. Dkt. No. 24, Ex. 15 (Writ of Execution). Six days later the District Court issued an abstract of judgment in favor of Ms. Holmes. *Id.* Ex. 16 (Abstract of Judgment). Ms. Holmes recorded the Abstract of Judgment and served various notices of levies on several of Rosalina's bank accounts and garnishing her wages between January and February 2020. *Id.* Exs. 17 & 18. Further, on February 20, 2020, Ms. Holmes recorded the writ of execution and notice of levy against the Residence, and on March 10 and 13, several of the levies were returned executed. *Id.* Exs. 19.

Meanwhile, the Harrises engaged in various transactions and transfers, including transfers to insiders, to dissipate assets available for creditors and hinder Ms. Holmes's ability to collect on her Judgment. In October 2019, shortly after the District Court denied Rosalina's post-trial motions, the Harrises refinanced the Residence, depleting the available equity by approximately $125,000. *See* Dkt. No. 23, Ex. 3 at 32:24-33:13. The Harrises also withdrew at least $45,000 from a retirement account around the same time. *Id.* at 46:20-47:8. The Harrises then made a series of improper transfers to or for the benefit of various family members, including Debtor's mother-in-law, sister-in-law, and adult daughter. Specifically, the Harrises transferred $20,000 for the benefit of Debtor's daughter, purportedly to buy her a new car. *See* Dkt. No. 24, Ex. 20 (SOFA in Prior Bankruptcy Case), at 39. The Harrises further engaged in a series of transfers to Debtor's mother-in-law and sister-in-law, totaling $35,000

between three transfers. *Id.* While Rosalina's statement of financial affairs characterized these transfers as "loans," Rosalina admitted at her § 341(a) meeting that in fact she made these insider transfers because she was aware of Ms. Holmes's efforts to enforce her judgment and was "paranoid" that Ms. Holmes would collect against proceeds, and wanted her relatives to "have the money" in case Rosalina "needed it." Dkt. No. 23, Ex. 3 at 27:7-28:3. Moreover, in November 2019, the Debtor purchased a brand-new truck for more than $60,000. *Id.* Ex. 5 (Depo. Tr. of Dean Harris), at 35-36.[2]

Ms. Holmes discovered additional concerning dealings by the Debtor through post-judgment discovery that occurred following dismissal of the Prior Bankruptcy Case. For example, shortly before the Prior Bankruptcy case was filed, the Harrises withdrew more than $13,000 from their financial accounts that was not previously disclosed. When asked about this during a deposition, the Debtor testified that the reason he did this was because "we had a good Christmas."). Dkt. No. 23, Ex. 5 at 78-79. Additionally, the Debtor's statement of financial affairs also discloses, for the first time, that the Debtor is also paying storage for an RV that he purportedly has no interest in, which is something that was never disclosed in the Prior Bankruptcy Case. *Id.* Notably, however, the Debtor's schedules *do not* disclose that the Harrises are also paying the insurance coverage for this RV. *See id.* Ex. 7 (Insurance Policy).

### F.      Rosalina filed the Prior Bankruptcy Case in bad faith solely to delay and hinder Ms. Holmes, and this Court promptly dismissed it.

Pursuant to the Writ of Execution, Ms. Holmes instructed a registered process server to levy on the Harrises' interest in the Property. This was initially done in February and March 2020. *See* Dkt. No. 24 at Ex. 19 (Notices of Levy on Residence).

On March 13, 2020, in the face of Ms. Holmes's levying on the Residence, Rosalina filed the Prior Bankruptcy Case. The schedules and statement of financial affairs filed in the Prior Bankruptcy Case made clear that it was filed in bad faith, for the sole purpose of delaying and hindering Ms. Holmes.

---

[2] When Ms. Holmes moved to dismiss the Prior Bankruptcy Case, she identified these issues and problematic transfers. Having been caught, the Debtor in this case attempts to correct the disclosures concerning these transactions. *See* Dkt. No. 19 at 34-35. But the disclosures are still inadequate and do not disclose the reason—let alone provide a legitimate one—for these transactions, or explain why the Prior Bankruptcy Case misrepresented the true nature of these transactions.

During the 341(a) meeting, Rosalina—and her bankruptcy counsel, who is also Debtor's bankruptcy counsel in this case—repeatedly admitted that the sole purpose for filing the Prior Bankruptcy was Ms. Holmes's Judgment, acknowledging that this is nothing more than a two-party dispute since bankruptcy was filed solely to prejudice Ms. Holmes with respect to her Judgment and enforcement thereof. When asked what the reasons were for filing the Prior Bankruptcy Case, Rosalina testified only that "I lost a federal court case and there's a $3 million debt that I owe." Dkt. No. 23, Ex. 3 at 7:14-17. Debtor's bankruptcy counsel expounded on this, stating that the Judgment "was in collection mode" and "[t]hat judgment is under appeal with no stay pending, and the bankruptcy was filed as the collection efforts on that judgment ramped up." *Id.* Rosalina testified that other than Ms. Holmes's Judgment, she had no reason for filing bankruptcy, and that there is no purpose to the Prior Bankruptcy Case other than dealing with Ms. Holmes's Judgment. *Id.* at 36:18-21. Removing any doubt that this case was filed to hinder and delay Ms. Holmes, when asked why Dean did not also file as a debtor, Rosalina's counsel responded for her, stating "[h]e is not a judgment debtor." *Id.* at 17:2-6. In other words, there was admittedly no legitimate reason for Dean, who is now the Debtor in this case, to file for bankruptcy.

On May 27, 2020, the Court granted Ms. Holmes's motion to dismiss the Prior Bankruptcy Case. *See* Dkt. No. 24, Ex. 10. The Court found "cause" to dismiss the Prior Bankruptcy Case because Rosalina "filed the petition in bad faith, in order to avoid the necessity of posting a supersedeas bond during the appeal of the Judgment," Rosalina had no financial problems other than the Judgment as of the petition date, and that "**there is no indication that [Rosalina] is pursuing other legitimate bankruptcy objectives . . . .**" *Id.* at 14-15. The Court expressly determined that Ms. Holmes was the estate's "only meaningful creditor" and that dismissal, as opposed to conversion to chapter 7, was in the best interests of the estate's creditors. *Id.* at 17.

The Court retained jurisdiction for the purpose of adjudicating a motion for attorneys' fees by Ms. Holmes. Dkt. No. 24, Ex. 9. On July 23, 2020, the Court granted Ms. Holmes's motion for attorneys' fees and costs in the Prior Bankruptcy Case. *Id.* Ex. 11. The Court awarded Ms. Holmes $45,757 in attorneys' fees and $3,435.44 in costs as compensation for work necessary to enforce and protect the Judgment entered in Ms. Holmes's favor in the 1983 Action. *Id.*

**G.      The Debtor filed this case hours before a hearing on the District Court's OSC why the Residence should not be sold.**

Following dismissal of the Prior Bankruptcy Case, Ms. Holmes resumed her efforts to collect on the Judgment. Accordingly, a notice of levy and a copy of the writ of execution were recorded with the office of the Los Angeles County Recorder on November 18, 2020. The registered process server served notice of the levy on the Harrises on or about November 24, 2020. The registered process server also personally served the occupant of the Residence on or about November 24, 2020. They were also served by mail on November 24, 2020.  *See* Bisconti Decl. Ex. 4 (Proofs of recordation and service of the notice of levy and writ of execution).

On December 4, 2020, Ms. Holmes filed a *Verified Ex Parte Application for Issuance of an Order of Sale of Dwelling; Order to Show Cause why Order for Sale of Dwelling Should not Issue (400 W. Altadena Dr., Altadena, CA 91001)* (the "Application") before the District Court. *See* Dkt. No. 23, Ex. 12 (Application). On December 8, 2020, the District Court granted the Application and issued an Order to Show Cause (the "OSC"), requiring the Harrises (or any other party in interest) "to appear on January 11, 2021, at 1:30 p.m. . . . to show cause, if any, why the Application for sale of the dwelling should not be granted." *Id.* Ex. 13 (OSC).

Neither Dean nor Rosalina filed any response to the District Court's OSC. Instead, just hours before the District Court was set to hear the OSC and likely grant the application for sale of the Residence,[3] Dean filed a bare-bones petition without any schedules, statement of financial affairs, or statement of income, in an attempt to delay the District Court proceedings. *See* Dkt. No. 1; *see also* Dkt. No. 23, Ex. 6. As a result, the District Court continued the hearing on the OSC to February 22, 2021. Dkt. No. 24, Ex. 14.

**H.      The Residence lacks any equity.**

Pursuant to a grant deed identified in the official records of the Los Angeles County Assessor-Record as document 95-368222, the Property is held by "Dean M. Harris and Rosalina L. Harris,

---

[3] The District Court asked Ms. Holmes's counsel to submit an order granting the application. *See* RJN Ex. 14 (Minute Order).

Husband and Wife, as Joint Tenants." *See* Bisconti Decl. Ex. 1 (Grant deed).[4] Ms. Holmes obtained a CLTA Litigation Guarantee Form (the "Condition of Title Guarantee") issued by Stewart Title Guaranty effective as of October 30, 2019, including a supplemental report dated September 3, 2020. As reflected in the Condition of Title Guarantee, there are no recorded homesteads on the Residence as of the effective date of the title report. *See id.* Ex. 6 (Condition of Title Guarantee).[5]

Ms. Holmes obtained an appraisal of the Residence, prepared by David Hayward, Certified Residential Appraiser certification no. AG018185, of the Hayward Appraisal Company (the "Appraiser"). *See* Bisconti Decl. Ex. 7 (Appraisal). As reflected in the Appraisal, the fair market value of the Residence is at least $1,175,000. The Condition of Title Guarantee indicates that, other than Ms. Holmes's lien arising from the Judgment, there are no exemptions recorded on the Residence. Additionally, according to the Condition of Title Guarantee, there are three current interest holders with recorded documents claiming some right or interest in the Residence: (i) Window World (filed in the original amount of $11,992.80) assigned to Blue View Corporation, P.O. Box 2926, La Jolla, CA 93028[6]; (ii) Sunrun, Inc., P.O. Box 4387, Portland, OR 97208 (unlisted amount); and (iii) Nationstar Mortgage LLC, d/b/a Mr. Cooper, 4000 Horizon Way, Irving, TX 75063, (filed in the amount of $480,000). *See* Bisconti Decl. Ex. 8.

Only the Mr. Cooper mortgage, however, appears to be a current lien on the Residence. *See* Bisconti Decl. Ex. 8 (Mr. Cooper Deed of Trust). First, the lien in favor of Window World appears to have been satisfied, since it was a 10-year loan given in 1996 and Rosalina did not list it as a debt in her bankruptcy schedules, in which she was required to list all debts under penalty of perjury. *See* Bisconti

---

[4] The documents attached to the Declaration of Anthony R. Bisconti are documents either filed in the 1983 Action, or publicly filed/recorded documents. Accordingly, Ms. Holmes requests that the Court also take judicial notice of them pursuant to Fed. R. Evid. 201.

[5] The Debtor has claimed a homestead exemption in the Residence in the amount of $600,000 in his schedules. *See* Dkt. No. 19. He is not entitled to that exemption amount, and instead is only entitled, at most, to a homestead exemption of $100,000. In any event, the amount of the homestead exemption is irrelevant for purposes of this Motion, since under any circumstance, there is no equity in the Residence available for unsecured creditors.

[6] In addition to Blue View Corporation, the Assignment of Deed of Trust lists American Document Services, Inc., 14211 Yorba Street, Tustin, CA 92780, as an alternative address to mail following recording of the deed of trust.

Decl. Ex. 9 (Window World deed of trust and assignment of deed of trust to Blue View Corporation) and Ex. 10 (Excerpt of Rosalina's bankruptcy petition and schedules). Furthermore, the Window World deed of trust was assigned to Blue View Corporation, who has acknowledged that all that remains to remove this lien is to reconvey title. *Id.* Ex. 11 (correspondence and invoice confirming reconveyance readiness). Second, the recorded document by Sunrun, Inc. relating to a solar panel lease expressly states that it is not a lien or encumbrance on the Residence. *See* Bisconti Decl. Exs. 12 and 13.

According to the most recent beneficiary statement provided by Mr. Cooper, the current outstanding balance with respect to its lien is $456,928.43. *See* Bisconti Decl. Ex. 14. The Debtor has scheduled the amount owed to Mr. Cooper as only $451,000. *See* Dkt. No. 19.

Because the value of the Residence is $1,175,000 as set forth in the Appraisal, when considering the amount owed to Mr. Cooper (at least $451,000) and Ms. Holmes's lien through the Abstract of Judgment (more than $3 million), there is no equity in the Residence.

## III.    THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY

### A.    Legal standard.

Relief from stay is appropriate "so long as the movant establishes a 'colorable claim' sufficient to establish his or her entitlement to seek relief from the automatic stay." *In re Jin Qing Li*, 2018 WL 1354548, at *4 (B.A.P. 9th Cir. Mar. 12, 2018) (citations omitted). "A claim is colorable for relief from stay purposes when there is a 'reasonable likelihood' that the creditor has a legitimate claim or lien against the debtor's property" or "plausible legal claim." *Id.* (citations omitted). As relevant here, the Court "shall" grant relief from stay because: (i) Ms. Holmes has demonstrated "cause" for such relief, (ii) the Residence lacks equity and is not necessary for an effective reorganization, and (iii) the Debtor filed the petition as part of a scheme to delay, hinder, or defraud Ms. Holmes involving multiple bankruptcy filings affecting the Residence. 11 U.S.C. §§ 362(d)(1), (2), & (4).

### 1.    "Cause" exists to grant relief from the automatic stay because the Petition was filed in bad faith.

The Court must grant relief from the automatic stay upon the showing of "cause." 11 U.S.C. § 362(d)(1). What constitutes "cause" to terminate the stay is determined on a case-by-case basis. *In re Delaney–Morin*, 304 B.R. 365, 369 (9th Cir. BAP 2003) (citing *In re MacDonald*, 755 F.2d 715, 717

(9th Cir.1985)). "It is well settled throughout the circuits, including the Ninth, that 'cause' for relief from stay under Section 362(d)(1) may include a finding by the Court that debtor's petition was filed in bad faith." *In re Powers*, 135 B.R. 980, 998 (Bankr. C.D. Cal. 1991) (citing *Idaho v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986)); *see also In re Yukon Enterps., Inc.,* 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984) (granting relief from stay for cause based on finding that case was not filed in good faith); *United Enters. v. ACI Sunbow, LLC* (*In re ACI Sunbow,LLC)*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997); *Little Creek Dev. Co. v. Commonwealth Mrtg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071-72 (5th Cir. 1986); *see State of Idaho v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986 ("The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay."); *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 394, 402 (Bankr. D. Ariz. 1990) (the conclusion that a petition was filed in bad faith "would serve as an independent basis to vacate the automatic stay under Section 362(d)(1).") (citation omitted).

The record contains overwhelming evidence that "cause" exists to lift the automatic stay in this case. For example:

- This case is nothing more than an attempt by the Harrises to circumvent the Court's earlier dismissal of the Prior Bankruptcy Case for "cause" as a bad faith filing, among other things. *See* Dkt. No. 24, Ex. 10 at 14-16 (observing, among other things, that there were "no significant creditors other than [Ms.] Holmes" and the estate's debts "could easily be dealt with" outside of bankruptcy). *See In re Piazza*, 719 F.3d 1253, 1259 (11th Cir. 2013) (in determining whether "cause" where "there are multiple bankruptcy filings or other procedural 'gymnastics'"); *see In re Mitchell*, 357 B.R. at 154 (history of filings and dismissals relevant to bad faith analysis).

- As the Court has already determined, this case is a two-party dispute. Dkt. No. 24, Ex. 10 at 16. *In re LLC 1 07CH12487*, 608 B.R. 830, 849 (Bankr. N.D. Ill. 2019); *In re Jakovljevic-Ostojic*, 517 B.R. 119, 125–26 (Bankr. N.D. Ill. 2014) (a bankruptcy court may raise "for cause" dismissal *sua sponte*)); *In re Woody*, 578 B.R. 739, 741-48 (Bankr. M.D.N.C. 2017) ("cause" present because case was "essentially a two-party dispute" between the debtor and one large creditor); *In re Griffieth*, 209 B.R. 823, 829 (Bankr.

N.D.N.Y. 1996) (courts appropriately consider whether a single creditor makes up the vast majority of liabilities the debtor seeks to discharge when determining whether "cause" is present).

- The Debtor and his spouse (debtor in the Prior Bankruptcy Case) made substantial transfers to family members, either gratuitously or for the express purpose of evading collection and delaying, hindering, and frustrating Ms. Holmes's ability to enforce her Judgment, and to make sure he "had a good Christmas" at the expense of his creditors. *See, e.g.*, *In re Edwards*, 2017 WL 3616582 (Bankr. E.D.N.C. Aug. 22, 2017) (where debtor did not try to reduce debts prior to the petition date and pledged significant financial support to a relative in lieu of repayment of dischargeable debts, "cause" was present for dismissal); *McDow v. Smith*, 295 B.R. 69, 81 (E.D. Va. 2003) (bad faith "cause" may be present in cases where a debtor "commit[s] fraudulent acts at the expense of his creditors, such as transferring significant assets beyond their reach"); *In re Marks*, 174 B.R. 37, 41 (E.D. Pa. 1994) ("unexplained transfers to place assets beyond the reach of creditors" can constitute "cause"); *see also In re Brown*, 88 B.R. 280 (Bankr. D. Haw. 1988); *In re Mottilla*, 306 B.R. 782, 790 (Bankr. M.D. Pa. 2004)) (citation omitted).

- The Debtor also made substantial unnecessary expenditures to further deplete the pool of assets potentially available for distribution to creditors, in order to maintain (or improve) his lifestyle instead of paying anything toward the Judgment. This includes, among other things, reducing the available equity in the Residence through a refinance of the Residence shortly after the Judgment was entered, spending more than $60,000 on a brand-new truck, and paying thousands of dollars in storage and insurance for a RV belonging to his mother-in-law. Dkt. No. 23, Ex. 5 at 35-36, and Ex. 7. *See In re Woody*, 578 B.R. at 744 (debtor's trade in of vehicle for brand new model shortly before filing petition and payments made toward the same rather than toward creditor's debt, just as the Debtor did here, contributed to finding of bad faith and "cause"); *see also Edwards*, 2017 WL 3616582 at *4 (same).

Under the totality of the circumstances, including those fully set forth in the Motion to Dismiss, the Court should grant Ms. Holmes relief from the automatic stay for cause under Section 362(d)(1).

**B.    The Residence has no equity and is not necessary for an effective reorganization.**

In addition to granting relief from the automatic stay for "cause," the Court "shall" lift the stay "with respect to a stay of an act against property under [Section 362(a)] if – (A) the debtor does not have equity in such property; and (B) such property is not necessary for an effective reorganization." 11 U.S.C. § 362(a).

To determine "equity" for purposes of Section 362(d)(2), courts calculate "the amount or value of a property above the *total* liens or charges." *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984) (citation omitted). The "equity analysis in [Section 362(d)(2)] focuses on 'the value, above all secured claims against the property, that can be realized from the sale of the property **for the benefit of all unsecured creditors**." *In re Ebersole*, 440 B.R. 690, 699 (Bankr. W.D. Va. 2010) (emphasis added) (*citing Nantucket Investors II v. California Federal Bank (In re Indian Palm Assocs., Ltd.)*, 61 F.3d 197, 207 (3d Cir. 1995) (quoting *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984)); *see also In re Young*, 2011 WL 3799245, at *9 (Bankr. D.N.M. Aug. 29, 2011) (equity for purposes of Section 362(d)(2)(A) exists if "the value from a sale can be realized for the benefit of unsecured creditors.").

In chapter 7 cases like this one, property subject to the automatic stay "cannot be 'necessary to an effective reorganization' under 11 U.S.C. § 362(d)(2) because the Debtor is proceeding under Chapter 7, which is a liquidation proceeding, not a reorganization." *In re Purdy*, 591 B.R. 307, 309 (Bankr. N.D. Ohio 2018) (citing *Matter of Vitreous Steel Prod. Co.*, 911 F.2s 1223, 1232 (7th Cir. 1990) ("Because this is a liquidation under Chapter 7 there will be no reorganization. The only question faced by the bankruptcy court, then, was whether the debtor had equity in the property."); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 376 (1988) (Being "necessary to an effective reorganization" means that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'")).

Here, the Debtor filed this case under chapter 7, so the only question before the Court under Section 362(d)(2) is whether there is equity in the Residence. 11 U.S.C. § 362(d)(2); *In re Purdy*, 591

B.R. at 309 (citations omitted). The answer to that question is clear: There is no equity in the Residence. As the Appraisal demonstrates, the Residence is valued at $1,175,000. Bisconti Decl. Ex. 7. The first position deed of trust in favor of Mr. Cooper is for the outstanding amount of $451,000. Dkt. No. 19. The Judgment, which encumbers the Residence by virtue of the recorded Abstract of Judgment, exceeds $3 million. Bisconti Decl. Exs. 2-3. Accordingly, there is no circumstance under which the sale of the Residence can result in any benefit to unsecured creditors, so there is no "equity" for purposes of Section 362(d)(2). *In re* Mellor, 734 F.2d at 1400 n.2; In *re Ebersole*, 440 B.R. at 699; *In re Young*, 2011 WL 3799245 at *9.

Because the Residence lacks equity and is not necessary for a chapter 7 reorganization, the Court must grant Ms. Holmes relief from stay under 11 U.S.C. § 362(d)(2).

### C.    This case was filed as part of a scheme to delay, hinder, or defraud Ms. Holmes involving multiple bankruptcy filings affecting the Residence.

Finally, the Court must grant relief from the automatic stay if it finds that "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting" a particular piece of real property. 11 U.S.C. § 362(d)(4). This section "permits the bankruptcy court to grant *in rem* relief from the automatic stay in order to address schemes using bankruptcy to thwart legitimate foreclosure efforts" under appropriate circumstances. *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870–71 (B.A.P. 9th Cir. 2012). "To obtain relief under § 362(d)(4), the court must find three elements to be present. First, debtor's bankruptcy filing must have been part of a scheme. Second, the object of the scheme must be to delay, hinder, or defraud creditors. Third, the scheme must involve . . . multiple bankruptcy filings affecting the property." *Id.*

All the requirements are met in this case to grant Ms. Holmes relief from the automatic stay under Section 362(d)(4). Both the Prior Bankruptcy Case and this one were filed just as Ms. Holmes was levying on the Residence, with this case filed just hours before the District Court was prepared to grant Ms. Holmes's Application to sale the Residence. The Record also makes clear the intent of the Debtor and his wife to delay, hinder, or defraud Ms. Holmes, particularly in light of the number of prepetition transfers to family members for the express purpose of evading Ms. Holmes's collection on the Judgment, and the timing of the filings to try to derail Ms. Holmes's attempt to sale the Residence. *See*

*Vardan v. Wells Fargo Bank, N.A.*, 606 B.R. 681, 685 (E.D. Va. 2019) (relief under Section 362(d)(4) appropriate where, as here, there were multiple bankruptcy cases filed by family members for the specific purpose of delaying a creditor seeking to foreclose); *see also Maines v. Wilmington Sav. Fund Soc'y.* 2016 WL 3661577, at *4 (W.D. Va. July 1, 2016) (evidence of previous bankruptcy case filings sufficient to justify bankruptcy court's granting of relief under Section 362(d)(4)); *In re Johnson*, 2008 WL 183342 (Bankr. E.D. Va. Jan. 18, 2008) (finding multiple, strategically timed bankruptcy filings can be a basis for inference of debtor's intent to hinder, delay, and defraud); *In re Madera*, 2008 WL 351446, at *5 (Bankr. E.D. Pa. Feb. 7, 2008) (imputing conduct of debtor in her prior case against debtor in current case in finding case was filed in bad faith): *In re Selinsky*, 365 B.R. 260, 264 (Bankr. S.D. Fla. 2007) (multiple cases filed by spouses sufficient to establish a scheme to defraud); *In re Kinney*, 51 B.R. 840, 845–46 (Bankr. C.D. Cal. 1985) (considering multiple bankruptcies filed by different adult family members to thwart efforts to foreclose on a jointly owned property as a 'scheme' of bad faith acts by one entity).

Consequently, the Court should grant Ms. Holmes relief from the automatic stay under Section 362(d)(4) as well.

**IV.    CONCLUSION**

Based on the foregoing, Ms. Holmes respectfully requests that the Court enter an order granting her relief from stay pursuant to 11 U.S.C. §§ 362(d)(1), (2), and (4).


Dated:  February 1, 2021                                    **BIENERT | KATZMAN, PC**
                                                            By:  */s/ Anthony R. Bisconti*
                                                                 Anthony R. Bisconti
                                                                 Nathan W. Reinhardt
                                                                 Attorneys for Creditor Crystal Holmes